**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | § § § | CIVIL ACTION NO. 1:10-cv-01370-PAG |
| Plaintiff | § § | |
| v. | § § | HONORABLE PATRICIA A. GAUGHAN |
| SAFECO INSURANCE COMPANY OF ILLINOIS, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO CORPORATION, LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL GROUP INC., THE OHIO CASUALTY INSURANCE COMPANY, and OPEN SEAS SOLUTIONS, INC. | § § § § § § § § § § | |
| Defendants | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY LITIGATION PENDING *EX PARTE* REEXAMINATION OF THE PATENT-IN-SUIT BY THE <u>UNITED STATES PTO</u>**

## I.  INTRODUCTION

The United States Patent and Trademark Office ("PTO") granted U.S. Patent 6,064,970 ("the '970 patent") based on Progressive Casualty Insurance Company's ("Progressive") argument that its claims were "directed to a system which adjusts the insurance premium for the current insurance premium period and not a future insurance premium period as in the applied prior art."  *See* Ex. A, 11/12/99 Examiner Interview Summary.  Defendants have uncovered at least three prior art references that disclose the exact feature Progressive relied upon to distinguish the prior art.  For example, the Kosaka reference, discussed *infra*, discloses adjusting an insurance rate in "real time."

Based on this prior art—and only 75 days after Progressive served the first of Defendants with the Complaint—Defendant Liberty Mutual Insurance Company ("Liberty Mutual") filed a petition for *ex parte* reexamination with the PTO.  This litigation should be stayed until the PTO completes the reexamination proceedings.  Approximately 75% of reexaminations result in a finding of invalidity or in amendments to the patent claims.  *See* Ex. B, *Ex Parte* Reexamination Filing Data, at 2.  If the case is not stayed and the PTO invalidates the claims of the '970 patent, any resources expended litigating the case will be wasted.  Significant aspects of the case may need to be re-opened and repeated if the case is not stayed and the patent claims are amended.

Although reexaminations take 20 months on average, PTO rules require that reexaminations related to litigation "have priority over all other cases."  Ex. C, MPEP § 2261.[1] Moreover, Progressive has substantial control over how long the '970 patent remains in reexamination.  Liberty Mutual's only involvement in this *ex parte* reexamination was to file the

---

[1] The MPEP, UNITED STATES PATENT AND TRADEMARK OFFICE, MANUAL OF PATENT EXAMINING PROCEDURE (8th ed. 2001), is the official rule book that patent examiners use for all patent examinations, including reexaminations. All excerpts from the MPEP are attached, in order, in Exhibit C.

request.  Progressive can reduce the pendency of the reexamination by up to five months if it chooses to participate in a PTO pilot program for expedited proceedings.  Progressive can further speed the reexamination proceedings by promptly responding to PTO communications.

Progressive will not be prejudiced by a stay.  Progressive delayed filing suit against Defendants, did not seek a preliminary injunction, and has indicated that a monetary remedy is adequate compensation for any purported infringement.  Progressive cannot credibly claim that Defendants will be unable to pay a damage award for any purported infringement during the time that the reexamination is pending.

## II.      STATEMENT OF THE FACTS

### A.      Progressive Has Delayed Enforcing the '970 Patent.

Progressive first contacted Defendant Safeco regarding the '970 patent almost three years ago.  On November 16, 2007, Progressive wrote to Safeco about Safeco's new program "offering a discount . . . for customers who use its Teensurance tracking devices."  Ex. D, 11/16/2007 letter from R. Hutchinson to M. Hughes.  Progressive went on "to advise [Safeco] . . . that Progressive owns substantial intellectual property rights relevant to usage-based insurance," including the '970 patent.  *Id.*  The letter concluded by inviting Safeco "to discuss the possibility of a license of our patented technology."  *Id.*  On December 26, 2007, Safeco responded that it understood that "Progressive is not taking a position that any current Safeco product is covered by any Progressive patent rights."  Ex. E, 12/26/2007 letter from S. Schrum to R. Hutchinson.

On November 28, 2008, Progressive wrote to Liberty Mutual regarding Safeco.  Ex. F, 11/28/2008 letter from C. Jarrett to C. Mansfield.  After summarizing its November 16, 2007 letter to Safeco, Progressive asked Liberty Mutual to "take a look at Safeco's Commercial Vehicle GPS Tracking Discount in light of [Progressive's patents]."  *Id.*  Liberty Mutual responded on December 12, 2008 and January 13, 2009, stating that it understood that

"Progressive continues not to take the position that any current Safeco product . . . infringes on Progressive patent rights."  Ex. G, 12/12/08 letter from E. Kenealy to C. Jarrett; Ex. H, 1/13/09 letter from E. Kenealy to C. Jarrett.  Progressive replied that "we have no opinion at this point, because we do not know the facts . . . ."  Ex. I, 12/23/09 letter from C. Jarrett to E. Kenealy.

On November 4, 2009, Christopher Mansfield of Liberty Mutual had discussions with Charles Jarrett of Progressive.  Cipriano Declaration, at ¶ 7.  During that discussion, Progressive stated that it had an opinion from outside counsel that Liberty Mutual's Onboard Advisor program infringed Progressive's patents.  *Id.*  Progressive offered Liberty Mutual a license under specific terms.  *Id.*  Liberty Mutual declined.  *Id.*

It was not until June 18, 2010 that Progressive brought suit against Defendants.  (Dkt. No. 1).  Progressive has not moved for a preliminary injunction.  The first of Defendants was served on July 9, 2010.  (Dkt. No. 11).

**B.     The Reexamination Request Will Proceed Quickly Unless Progressive Delays.**

Soon after the lawsuit was filed, work began on a request for *ex parte* reexamination of the '970 patent.  Liberty Mutual filed its *ex parte* request on September 22, 2010, 75 days after the first of Defendants was served with the Complaint.  The request is over 170 pages long and includes more than 250 pages of exhibits.  Ex. J, Request for *Ex Parte* Reexamination of U.S. Patent No. 6,064,970.[2]  The PTO website indicates that the reexamination was found to conform to the necessary formalities on September 29, 2010.  Ex. K, Reexamination Transaction History. By rule, the PTO will decide whether to conduct the reexamination by December 22, 2010.  Ex.

---

[2] Because the Request for Reexamination and its exhibits total hundreds of pages, only the actual request (176 pages) is attached at Exhibit J.  The complete filing is publicly available on the PTO website at http://portal.uspto.gov/external/portal/pair.  The website is accessed by entering the two displayed code words. From there, reexamination information and documents can be found by entering "90/011252" as the "Application Number."

C, MPEP § 2241.  The PTO is highly likely to find that there are substantial new questions of patentability, and thus initiate a full reexamination proceeding, as it does with 92% of *ex parte* requests.  Ex. B, *Ex Parte* Reexamination Filing Data, at 1.

The median reexamination pendency is 20 months.  Ex. B, *Ex Parte* Reexamination Filing Data, at 2.  However, when a patent is involved in litigation, the PTO conducts reexamination on an accelerated schedule.  *See* Ex. C, MPEP § 2261 ("Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases."); *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, 2007 U.S. Dist. LEXIS 17536, at *16 (W.D. Mich. March 12, 2007) (citing MPEP § 2261).  If the litigation is stayed, "all aspects of the proceeding will be expedited to the extent possible" and "[a]ction on such a proceeding will generally take precedence to any other action taken by the examiner."  Ex. C, MPEP § 2286(I).  Therefore, if this Court were to grant Defendants' motion, the pendency of the reexamination would likely be shorter than 20 months.

Progressive has substantial control over the duration of the reexamination.  First, once an *ex parte* reexamination request is filed, the patentee defends its patent without any further communication from the requestor (i.e., Liberty Mutual or any other Defendant).  *Id.* § 2254.  Second, the PTO has created a pilot program allowing patent owners to reduce the reexamination process by up to five months by forgoing an "owner's statement."[3]  Ex. L, Pilot Program for Waiver of Patent Owner's Statement in Ex Parte Reexamination Proceedings, 75 Fed. Reg. at 47,270 (Aug. 5, 2010).  An owner's statement gives the patentee an opportunity to file a preliminary statement in response to a reexamination request.  Even *before* the pilot program, when there was no benefit to foregoing an owner's statement, only about 10% of patent owners

---

[3] Defendants informed Progressive of the pilot program on September 29, 2010.  Ex. O, 9/29/2010 letter from N. Jantzi to L. Miller.

choose to file one.[4]  *Id.* at 47,270.  Third, Progressive can also trim delays by promptly responding to PTO communications.  As a matter of PTO procedure a patentee has a "shortened statutory period" (such as two months) to respond to PTO "office actions" (substantive communications).  Ex. C, MPEP § 2263.  The patentee can extend this shortened statutory period (and thus delay the reexamination) for sufficient cause and for a reasonable time specified.  *Id.* § 2265.  The patentee may also file a response *before* the due date.

The '970 patent has an effective filing date of January 26, 1996 and will expire on January 26, 2016, almost six years from now.  35 U.S.C. § 154(a)(2).  Assuming *arguendo* that the '970 patent emerges from the PTO reexamination with any valid claims, Progressive will be able to enforce the '970 patent.  *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985).

## C.   The Reexamination Request is Likely to Result in Progressive's Claims Being Canceled or Amended.

The reexamination request presents new art that demonstrates the claimed subject matter of the '970 Patent was old.  The independent claims of the '970 patent are addressed to "methods" (claims 1, 4, 5 and 6) and a "database" (claim 2).  The elements of these claims generally break down into three categories:

> (1)   "monitoring" or "extracting" data representative of an operating state of a vehicle, such as time and location of vehicle operation, during a selected time period;
>
> (2)   manipulating the data, such as by "storing," "recording," "consolidating," "analyzing" or "grouping" the data in a database; and
>
> (3)   utilizing that data for "determining," "deciding," "producing," or "generating" an insurance cost for the selected time period.

---

[4] Parties generally forego an owner's statement because they have the opportunity to fully respond to the requestor's arguments during the normal course of communicating with the PTO.  *See* Ex. C, MPEP § 2254.

The "Background of the Invention" section of the '970 patent admits that the data "monitoring/extracting" and "manipulating" elements were old.  It was the use of this data to determine a cost of insurance that Progressive said was new:

> Current motor vehicle control and operating systems comprise electronic systems readily adaptable for modification to obtain the desired types of information relevant to determination of the cost of insurance.
>
> *       *       *
>
> The present invention contemplates a new and improved motor vehicle monitoring, recording and communication system, which primarily overcomes the problem of determining cost of vehicle insurance based upon data which does not take into consideration how a specific vehicle is operated.

Ex. M, '970 patent, at 3:25-28, 3:40-45.[5]

During patent prosecution the PTO rejected the claims.  To gain allowance of the '970 patent, Progressive had to modify its claims such that the "cost of insurance" is determined during the same time period that vehicle information is "monitored":

> The important novelty for the subject invention is retained in these claims by utilizing the output value for the data collection period to be determined by the data collected in that same period.  Thus, the important and consequential advantage of the subject invention, of determining insurance costs for a certain period based upon how the vehicle is operated during that very same period, is defined in the claims and thus patentably distinguishes the invention from the teachings of the references.  (Ex. N, 7/19/99 Amendment, at p.6).
>
> *       *       *
>
> Representative Roche argued that the instant Invention is directed to a system which adjusts the insurance premium for the current insurance premium period and not a future insurance premium period as in the applied prior art.  (Ex. A, 11/12/99 Examiner Interview Summary).
>
> *       *       *

---

[5] Citations to the '970 Patent are by column number (at the top of each page of the written portion of the patent) and line number (down the middle of the patent).  For example, "'970 Patent at 1:19-22" means column 1 from lines 19 to 22, and "'970 Patent at 11:42-12:27" means column 11 line 42 through column 12 line 27.

At the interview, the Examiner indicated that the rejection on art for claims 21 [now 1], 24 [now 4] and 26 [now 5] has been dropped. The rejection on art of claims 22 [now 2] and 28 [now 6] now remain. The Examiner commented that he failed to see in claims 22 [now 2], 28 [now 6] a correlation between the data collection mentioned in these claims and the particular period of insurance charges for which the data is used are the same periods. The foregoing amendments to claims 22 [now 2] and 28 [now 6] address the Examiner's concern. (Ex. S, 11/18/99 Amendment).[6]

Thus the, purported point of novelty on which the '970 patent was based is using driving information collected in a certain time period to calculate insurance costs in that same time period. Patent claims are canceled or amended in 75% of reexamination proceedings. Ex. B, *Ex Parte* Reexamination Filing Data. This result is likely here, since the reexamination request raises substantial new questions of patentability regarding anticipation or obviousness[7] that precisely target this alleged point of novelty:

- The Kosaka reference, published in 1992, discloses a risk evaluation device "for evaluating risk in moving bodies (vehicles) or insurance customers," and to an "insurance premium determination device that employs this *risk evaluation device*." Ex. P, Kosaka, at 2 (emphasis added); *see also* Ex. J, Request for *Ex Parte* Reexamination of U.S. Patent 6,064,970 at p. 3, 23-67. The information gathered and evaluated by these devices is then used to determine a "real time" insurance premium. Ex. P, Kosaka, at 4, 7.

- The Dorweiler reference, published in 1930, discloses a method for determining "premium bases" using data from "devices" to assess exposure retrospectively, i.e., collecting data during one period that affects an insurance rate during the same monitored period. Ex. Q, Dorweiler, at 339; Ex. J, Request for *Ex Parte* Reexamination of U.S. Patent 6,064,970 at 3, 69-117. The article states that when hazard media such as "mileage, car-hour, or fuel-consumption exposure" are used in "*rate making*," they would "*require a final adjustment which would be determined retrospectively*" for the period monitored. Ex. Q, Dorweiler, at 339 (emphasis added).

- The Pettersen reference, published in 1990, taught that vehicle data related to the "driving pattern of a motor vehicle" may be used to provide a "*bonus*" to persons with measured safe driving characteristics, and in particular, a "*more fair bonus arrangement*, i.e., that policy holders having a 'careful' driving pattern – low speeds and low accelerations –

---

[6] During prosecution, the examiner changed the numbering of the claims. Brackets indicate the claim numbers of the issued '970 patent.

[7] Other issues relating to patentability cannot be raised in a reexamination request. Ex. C, MPEP § 2209. As a result, Liberty Mutual's motion to dismiss based on 35 § U.S.C. 101 (*Bilski*), Dkt. No. 32, is not at issue before the PTO and will still be at issue if the PTO does not cancel all the claims of the '970 patent.

may be allotted a higher bonus."  Ex. R, Pettersen, at 1 (emphasis added); Ex. J, Request for *Ex Parte* Reexamination of U.S. Patent 6,064,970 at 4, 118-168.  One of ordinary skill at the time would naturally have understood Pettersen's disclosure of this "bonus" in its ordinary sense to include at least a possible reward for performance in the monitored period, and would thus have recognized Pettersen to be disclosing an insurance scheme where the policyholder receives such a "bonus" or rebate for good driver behavior during the measured time period against the premium for that period.  Ex. R, Pettersen, at 1.

## III.    STANDARD OF REVIEW

Courts have the power to manage their dockets by granting stays pending reexamination of a patent-in-suit.  *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008).  Courts in the Northern District of Ohio have considered the following factors when deciding whether to exert their power to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 2010 U.S. Dist. LEXIS 92851, at *4 (N.D. Ohio Aug. 16, 2010); *01 Communique Lab., Inc. v. Citrix Sys. Inc.*, 2008 U.S. Dist. LEXIS 19241, at *4 (N.D. Ohio Mar. 12, 2008).

## IV.    ARGUMENT

### A.    A Stay Will Not Unduly Prejudice or Disadvantage Progressive.

As Defendants explained above, the length of any delay pending reexamination is relatively short and largely under Progressive's control.  Progressive cannot credibly claim that this stay will cause undue prejudice.  When the plaintiff fails to act with urgency, there is little risk of prejudice.  *Allied Erecting*, 2010 U.S. Dist. LEXIS 92851, at *7.  Progressive waited 31 months to bring suit after it initially contacted Defendant Safeco about the '970 patent.  If Progressive were prejudiced by delay, it would have quickly asserted it rights.  *See Magna Donnelly*, 2007 U.S. Dist. LEXIS 17536, at *14-15 (granting a stay where plaintiff waited three

years to file suit); *Ingro v. Tyco Industries, Inc.*, 1985 U.S. Dist. LEXIS 19300, at *6 (N.D. Ill. May 31, 1985) ("[E]specially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings . . . will constitute neither undue nor unreasonable delay."). Progressive's decision not to ask for a preliminary injunction also demonstrates that any delay will not cause undue prejudice. *See Allied Erecting*, 2010 U.S. Dist. LEXIS 92851, at *7.

Progressive would not be prejudiced by a delay in obtaining a remedy. By deciding not to seek a preliminary injunction, Progressive demonstrated that it is willing to accept monetary damages for Defendants' alleged infringement. *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, 1987 U.S. Dist. LEXIS 15033, at *5-6 (N.D. Ill. Jan. 30, 1987). Progressive's offer to license its technology similarly indicates a willingness to accept a fee for the use of its patent. *See Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560 (D. Del. 2008). If Progressive's patent emerges from reexamination unscathed, and if Defendants are ultimately found to have infringed, Progressive will be able to seek damages for the time that the reexamination was pending. *See Magna Donnelly*, 2007 U.S. Dist. LEXIS 17536, at *18.

### B. A Stay Would Simplify the Issues in Question.

A stay would likely result in a fewer issues to litigate when the '970 Patent emerges from reexamination. The PTO changes or modifies claims during the great majority of *ex parte* reexaminations. If the PTO cancels entire claims, it will greatly simplify the litigation. *Citrix*, 2008 U.S. Dist. LEXIS 19241, at *6 (citing *Gould*, 705 F.2d at 1342). This possibility is more likely when few patents are at issue and there are multiple bases for invalidating the patent. *See Avery Dennison Corp. v. Alien Tech. Corp.*, 2009 U.S. Dist. LEXIS, at *7-8 (N.D. Ohio July 20, 2009). Discovery, claim construction, and validity determinations are all simplified and made less costly to litigate if the PTO cancels some or all of the claims. *Guthy-Renker Fitness LLC v.*

*Icon Health & Fitness*, 1998 U.S. Dist. LEXIS 16553, at *6 (C.D. Cal. July 15, 1998).  As a result, a stay pending reexamination may simplify the proceedings enough to make up for any delay.  *Tap Pharm. Prods. v. Atrix Labs.*, 2004 U.S. Dist LEXIS 3684, at *5 (N.D. Ill. Mar 4, 2004).  Indeed, if the PTO cancels all claims, the Court can immediately dismiss the case.  In addition to giving the PTO the opportunity to simplify the litigation, a stay eliminates the risk of needlessly litigating claims that are eventually canceled.  *Id.* at *7.

A stay would also be beneficial if the PTO modifies claims instead of canceling them outright.  Without a stay, the Court and the parties risk engaging in costly and time consuming litigation concerning claim language that ends up being moot.  *Id.* at *6-7.  If the PTO changes the claim language of the '970 patent after protracted litigation, the parties risk having to engage in supplemental discovery to cover new infringement and invalidity theories.  The Court's construction of any claims terms could end up being inaccurate or obsolete.  The mere risk of shifting claim language will decrease predictability of the parties' positions and deter settlement.  *Magna Donnelly*, 207 U.S. Dist. LEXIS 17536, at *6.

A stay would streamline litigation even if the '970 patent emerges from reexamination without amendments.  The dialog between the PTO and Progressive will focus attention on the important issues in the case and may eliminate or streamline issues of validity that have already been vetted.  Progressive is also likely to make representations to the PTO that will further define the scope of the '970 Patent.  *See Guthy-Renker Fitness*, 1998 U.S. Dist. LEXIS 16553, at *5-6.

### C.    A Stay Is Appropriate Because Litigation Has Just Begun.

Defendants' prompt action in both requesting reexamination and filing a motion for stay weighs strongly in favor of granting a stay.  *Magna Donnelly*, 207 U.S. Dist. LEXIS 17536, at *12.  ("Defendants have sought reexamination before the PTO and a stay in this Court even before case scheduling deadlines have been set.  It would be difficult to conceive of a case in

which this factor more strongly favored the issuance of a stay."). Defendants filed their motion at least seven months before the deadline provided by the local rules.[8] Courts routinely grant motions to stay pending reexamination brought during the pleading stage. *See, e.g., Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 U.S. Dist. LEXIS 12149 (W.D.N.Y. June 11, 1999); *Tap Pharm.*, 2004 U.S. Dist. LEXIS 3684. And courts in the Northern District of Ohio have granted stays at much later stages. *E.g. Allied Erecting*, 2010 U.S. Dist. LEXIS 92851 (granting a stay during discovery); *Citrix*, 2008 U.S. Dist. LEXIS 19241 (granting a stay while seven summary judgment motions were pending).

Defendants did not engage in dilatory tactics. A stay of litigation is sometimes denied if the moving party has unnecessarily delayed in filing for reexamination or for a stay after a reexamination request has been filed. *See Citrix*, 2008 U.S. Dist. LEXIS 19241, at \*9-11. Here, Defendants prepared and filed a lengthy reexamination request within 75 days after the first Defendant was served. This motion for stay was filed less than a month later. Stays are regularly granted for Defendants who display far less diligence. *See, e.g., Grayling Indus., Inc. v. GPAC, Inc.*, 1991 U.S. Dist. LEXIS 16750, at \*6-7 (N.D. Ga. Mar. 25, 1991) (granting stay despite a two year delay before requesting reexamination and even though it was "not clear that Plaintiffs had good reason for the delay").

### D.      Granting a Stay Would Be Consistent with Congress's Preference that the PTO Determine Patent Validity.

Congress intended that reexamination be used to improve judicial efficiency and predicted many of its benefits. The Patent Act of 1980 introduced changes to United States patent laws to allow a person to request reexamination of a patent. Public Law No. 96-517, Act

---

[8] The local patent rules require parties to file motions for stay before or on the due date of their Final Contentions. L.P.R. 3.11. The Final Contentions are due 30 days after the Court's claim construction ruling, *see* L.P.R. 3.10, which will occur after all claim construction submissions are due on June 6, 2011. (Dkt. No. 42).

of Dec. 12, 1980, 96th Cong., 2d Sess., 94 Stat. 3015 (codified at 35 U.S.C. §§ 301-307 (1981)).

One of the key rationales in passing the Act was to use the PTO's technical expertise to reduce

the cost and burden of litigating in court.  *Ingro*, 1985 U.S. Dist. LEXIS 19300, at *9-10.  Since

then, Courts have confirmed that shifting threshold validity issues to the PTO has many benefits

including:

> 1.  All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2. Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4. The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7. The cost will likely be reduced both for the parties and the Court.

*Emhart*, 1987 U.S. Dist. LEXIS 15033, at *3-4.  Courts in the Northern District of Ohio find

Congress's intent to be persuasive in granting reexamination.  *See e.g. Citrix*, 2008 U.S. Dist.

LEXIS 19241, at *3-4.  Because granting a stay at such an early stage in the litigation would

simplify the issues before the court without imposing undue prejudice on Progressive, it

represents an ideal situation to further the public policy of having the PTO decide issues of

validity.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay all proceedings in this action starting immediately and continuing until the PTO's reexamination of the '970 Patent is complete.


Dated:    October 14, 2010                    Respectfully submitted,


*/s/ John S. Cipolla*
John S. Cipolla (State Bar No. 0043614)
CALFEE, HALTER & GRISWOLD, LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland , OH 44114
Telephone:  (216) 622-8200
Facsimile:  (216) 241-0816
jcipolla@calfee.com

James R. Myers (*pro hac vice*)
Nicole M. Jantzi (*pro hac vice*)
ROPES & GRAY, LLP
One Metro Center
700 12th Street
Washington, D.C.  20005
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
James.Myers@ropesgray.com
Nicole.Jantzi@ropesgray.com

Joshua Van Hoven
ROPES & GRAY, LLP
1900 University Avenue
East Palo Alto, CA  94303-2284
Telephone:  (650) 617-4000
Facsimile:  (650) 617-4090
Josh.VanHoven@ropesgray.com