**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Progressive Casualty Insurance Co.,** | ) | **CASE NO. 1:10 CV 1370** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Safeco Insurance Co.,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

### INTRODUCTION

This matter is before the Court upon defendants' Motion to Stay Litigation Pending *Ex Parte* Reexamination of the Patent-In-Suit by the United States PTO (Doc. 44). This is a patent infringement dispute. For the reasons that follow, defendants' motion is GRANTED.

### FACTS

Plaintiff, Progressive Casualty Insurance Company, brings this action against defendants, Safeco Insurance Company of Illinois, Safeco Insurance Company of America, Safeco Corporation, Liberty Mutual Insurance Company, Liberty Mutual Group, Inc., The Ohio Casualty Insurance Company, and Open Seas Solutions, Inc. (hereinafter collectively

1

"defendants"), alleging that defendants are infringing plaintiff's patent, U.S. Patent No. 6,064,970 (hereinafter "patent").

The facts of this case are set forth more fully in the Court's Memorandum of Opinion and Order denying defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted (Doc. 48).  On September 22, 2010, defendants filed a petition for an *ex parte* reexamination of the patent with the United States Patent and Trademark Office (hereinafter "PTO").  Defendants now move to stay the litigation until the reexamination, if granted, is complete.  Plaintiff opposes the motion.

## **LAW AND ANALYSIS**

A district court has the power to stay litigation pending the outcome of patent reexamination proceedings through the inherent power to manage its own docket.  *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  Courts weigh three factors in determining whether to grant such a stay:  "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *01 Communique Lab., Inc. v. Citrix Sys.,* No. 06CV0253, 2008 U.S. Dist. LEXIS 19241, at *4 (N.D. Ohio March 12, 2008) (citing *Xerox Corp. v. 3Com Corp.,* 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)).  Courts often also consider whether the party seeking the stay has done so in good faith or for the purposes of delay.  *Id.*

1. **Prejudice**

Defendants argue that plaintiff will not be prejudiced by the stay because plaintiff waited 31 months to bring suit after it originally contacted defendant Safeco about possible

infringement of the patent. Defendants further argue that reexamination will occur in a relatively short period of time and that plaintiff has some degree of control over the length of time, as plaintiff can choose to participate in a PTO pilot program in which patent owners forego an owner's statement and plaintiff can choose to respond to inquiries from the PTO promptly. Defendants also argue that plaintiff has demonstrated that it will not be prejudiced during the delay caused by reexamination because it did not seek a preliminary injunction and because it offered to license its technology to defendant Liberty Mutual, indicating that money damages are sufficient to compensate plaintiff for any infringement.

Plaintiff responds that it will be prejudiced by a stay because defendants will be free to expand their infringing products and will gain market share in the usage-based insurance market in violation of plaintiff's right to exclude others from using its invention. Plaintiff also claims its reputation will be damaged as a leader in the field of usage-based insurance. Plaintiff argues that this type of harm is irreparable and compensable only by a permanent injunction. Plaintiff further claims that it did not engage in delay because it was not clear that defendants were offering any infringing products until late 2009, when it became aware of defendant Liberty Mutual's Onboard Advisor program and offered Liberty Mutual a license. It was not until February of 2010 that it became aware that Safeco was offering its Rewind program in direct competition with plaintiff. Plaintiff argues that if defendants' request for a stay is granted, defendants will effectively be able to avoid a permanent injunction if they are found to have infringed plaintiff's patent. In support, plaintiff points out that the patent expires in a little over five years, the average length of time for reexamination is over 25 months as of June 2010, and the litigation will not begin in earnest until after the reexamination. Plaintiff also notes that the

PTO received about the same number of reexamination requests in the first six months of 2010 as it did in the entire year of 2009, making it likely that the reexamination process will be significantly longer than 25 months. Plaintiff also argues that in addition to irreparable economic harm, evidence may be lost as memories fade, witnesses move on, and documents are lost in the shuffle, which would prejudice plaintiff on issues like willful infringement.[1]  Finally, plaintiff argues that defendants are deliberately seeking to delay the litigation. In support, plaintiff argues that defendants have known about plaintiff's patent for several years and willfully ignored it. Had defendants believed the patent was invalid, they could have filed a reexamination request as early as 2007.

Defendants reply that plaintiff has not shown prejudice. Plaintiff has not explained how any additional delay during a stay for reexamination makes injunctive relief more urgent than it was when the case was filed. Defendants further argue that any harm from postponing a permanent injunction is compensable by money damages. Defendants reject plaintiff's claim that the patent broadly covers the usage-based insurance industry, and that plaintiff would thus be harmed by loss of market share, pointing out that Liberty Mutual's usage-based insurance program does not compute an insurance rating for the monitored period, as specified in the patent. Defendants argue that the patent system is designed to compensate patent holders for delays in recovering damages, including diverted sales, price erosion, increased expenditures caused by infringement, and prejudgment interest, and that plaintiff must show harm beyond this to show undue prejudice.

---

[1] Plaintiff suggests that if the Court grants a stay of claim construction, the Court should permit discovery to continue so that such evidence is preserved for trial.

Upon review, the Court finds that plaintiff has not demonstrated undue prejudice.  Delay due to the reexamination process is not itself a reason to find prejudice against plaintiff.  *See Allied Erecting and Dismantling Co., Inc., v. Genesis Equip. and Mfrg., Inc.,* No. 4:08CV589, 2010 U.S. Dist. LEXIS 92851, at *6-7 (N.D. Ohio Aug. 16, 2010) ("While some prejudice to Plaintiffs is inherent in any delay, this alone is not sufficient to prevent a stay.  If it were, few if any patent cases would be stayed pending reexamination by the PTO.").  Additionally, the Court finds that neither party has engaged in deliberate delay tactics– plaintiff could not reasonably be expected to file a lawsuit at the first moment it suspects its patent might be implicated in a competitor's product, especially without the investigation and actual knowledge to support such a claim.  Similarly, defendants could not reasonably be expected to ask the PTO to reexamine a patent that is not being unequivocally asserted against them.  While plaintiff also complains that evidence may be lost due to the delay, plaintiff gives no reason why it is more likely to occur in this case than in any other case.  *See id.* at *7.

Plaintiff argues that it will suffer irreparable harm during the delay caused by the reexamination due to defendants' direct competition, increasing market share, and plaintiff's inability to exclude defendants from using the patented invention, but the reality is that proceeding with the litigation would not avoid this harm as defendants would presumably continue to develop and promote their usage-based insurance products throughout the litigation.  If plaintiff prevails, plaintiff could enforce its permanent injunction against defendants perhaps somewhat sooner than if a stay were not granted, but would be limited to money damages for the period of time between when the suit was filed and its resolution.  Litigation itself is typically lengthy and involves unforeseen delays.  Additionally, the reexamination may streamline the

issues to an extent that the litigation itself is shortened.  Accordingly, plaintiff has not shown undue prejudice, which weighs in favor of granting a stay.

### 2. Simplification of Issues

Defendants argue that a stay would simplify the issues in the case.  Defendants argue that in the majority of *ex parte* reexaminations, the PTO changes or modifies claims, and if entire claims are canceled, the litigation will be greatly simplified.  Defendants also argue that even if claim language is only changed, a stay would be beneficial because the parties would not waste resources on claim language that ends up being moot.  Finally, defendants argue that even if the patent emerges unchanged from the reexamination, the litigation would be streamlined because the dialogue between the PTO and plaintiff will focus the issues and may eliminate or streamline issues of validity.

Plaintiff responds that a stay would not simplify the issues because the reexamination will likely not result in amendment or cancellation of the claims, given that the prior art references cited by defendants are cumulative of the prior art considered by the PTO prior to issuing the patent.  Plaintiff argues that the vast majority of patents emerge from reexamination with at least some valid claims, so it would be speculative at best to suggest that an *ex parte* reexamination would simplify the issues.  Plaintiff also argues that only a fraction of the issues that defendants are likely to raise in litigation can be addressed upon reexamination, which should weigh against a stay.  Plaintiff points out that pursuant to 35 U.S.C. §§ 301 and 311(b)(2), reexamination can only consider invalidity under 35 U.S.C. §§ 102 and 103 based on prior patents and printed publications, and cannot consider invalidity under 35 U.S.C. §§ 101 or 112, nor can a reexamination address assertions that a patent is unenforceable or not infringed.

6

Plaintiff also argues that issues will not be simplified because defendants are not bound by the results of the reexamination– defendants will be able to raise the exact same invalidity arguments in the litigation even if the PTO rejects them in reexamination.  Finally, plaintiff argues that postponing claim construction will not serve the interests of justice or efficiency because any amendments to the claims are likely to involve language that is the same or similar to what is already in the claims, and limited supplemental claim construction, if necessary, can be dealt with before trial.

Defendants reply that a stay would promote judicial economy because the reexamination request focuses on the alleged point of novelty of the patent:  determining the cost of insurance for the data collection period.  Defendants argue that the prior art references they cite in the reexamination request each disclose determining insurance rates for the data collection period.  Defendants also argue that even on the 25% chance that no claims are canceled or amended, the prosecution of the reexamination would create a record for claim construction and infringement analysis, given that the accused Rewind program uses driving data to waive a driving incident for a future insurance period, not the same data collection period as the patent claims.

Upon review, the Court finds that simplification of the issues weighs in favor of granting a stay.  The reexamination data from the USPTO for 2010 shows that since the inception of *ex parte* reexaminations in 1981, over 90% of requests for *ex parte* reexaminations have been granted.  Thus, it is likely the PTO will grant defendants' request for reexamination.  Further, 77% of all patents which have been reexamined since 1981 have either had all claims canceled or changes made to the claims.  Thus, it is also likely at least some of the patent's claims will be changed upon reexamination.  Plaintiff is correct that defendants are not bound by the results of

the *ex parte* reexamination and that defendants' basis for reexamination constitutes only a fraction of the issues in this case.  If claims are canceled or changed, however, it would simplify the issues pertaining to defendants' arguments on invalidity based on prior art.  Even if all the claims are confirmed by the PTO, the record of reexamination is still likely to be entered at trial, reducing the length and complexity of the litigation.  *See Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2009 WL 3673433, at *2 (E.D. Tex. April 3, 2009).  Additionally, if claims are canceled or changed, it may simplify the issues with respect to the invalidity arguments defendants raised in their Rule 12(b)(6) motion and will presumably assert during the litigation.  Granting a stay will also avoid duplication of efforts by the Court should the claim language be changed.

### 3. Stage of the Case

Defendants argue that a stay is appropriate because litigation has just begun.  Plaintiff argues that a stay is premature at this stage of the case because the PTO has not yet granted defendants' reexamination request.[2]

Upon review, the Court finds that this factor weighs heavily in favor of granting a stay, even prior to the PTO issuing its decision on whether to grant defendants' reexamination request.  This case is in a very early stage, and discovery has barely begun.  While the PTO has not yet granted defendants' request, it will decide whether to reexamine the patent by December 22,

---

[2]  Plaintiff also argues that without an answer to the complaint, the Court cannot conclude that the issues raised in the reexamination request are substantially identical to the issues in the litigation.  Plaintiff cites no case holding that issues in a reexamination request must be substantially identical to issues in the litigation before a court should grant a stay.

8

2010.  Should the PTO decide to deny the request, the delay of several weeks will be insignificant to the course of this case.  Moreover, the Court finds that because the case is at such an early stage, a stay of the entire case, including discovery and claim construction, is appropriate.

Accordingly, given that the plaintiff has not shown undue prejudice, that the reexamination will likely simplify the issues for litigation, and that the case is at a very early stage, defendants' motion is granted.

### **CONCLUSION**

For the reasons set forth above, defendants' Motion to Stay Litigation Pending *Ex Parte* Reexamination of the Patent-In-Suit by the United States PTO is GRANTED.  This case will be closed, but reopened upon immediate notification of either party after the conclusion of the reexamination process.

IT IS SO ORDERED.


                 /s/ Patricia A. Gaughan  
                PATRICIA A. GAUGHAN  
                United States District Judge

Dated:  11/12/10