UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY | ) ) ) | ` CASE NO. 1:10CV01370 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| SAFECO INSURANCE COMPANY OF ILLINOIS, *et al*., | ) ) ) | |
| Defendants. | ) | **ORDER** [Resolving ECF No. 98] |


| | | |
|---|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY | ) ) ) | CASE NO. 1:11CV00082 |
| Plaintiff, | ) ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| ALLSTATE INSURANCE COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) | **ORDER** [Resolving ECF No. 118] |


PROGRESSIVE CASUALTY            )

| | | |
|---|---|---|
| INSURANCE COMPANY | ) | |
| | ) | CASE NO. 1:12CV01068 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** [Resolving ECF No. 36] |

| | | |
|---|---|---|
| PROGRESSIVE CASUALTY | ) | |
| INSURANCE COMPANY | ) | |
| | ) | CASE NO. 1:12CV01070 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| HARTFORD FIRE INSURANCE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **ORDER** [Resolving ECF No. 48] |

Each of the defendants in the four related patent cases on this Court's

docket–Liberty Mutual[1] (Case Nos. 1:10CV01370 and 1:11CV00082), State Farm

Mutual Automobile Insurance Company ("State Farm") (Case No. 1:12CV01068),

---

[1] The name "Liberty Mutual" is used to refer, collectively, to Liberty Mutual Group, Inc.,
Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Safeco
Corporation, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, the
Ohio Casualty Insurance Company, and Open Seas Solutions, Inc.  Liberty Mutual Group, Inc., is
the parent corporation of the subsequently-named entities.

and Hartford[2] (Case No. 1:12CV01070)–have moved to stay the actions against them in light of recent proceedings instituted by the Patent Trial and Appeal Board ("PTAB")[3] for transitional Covered Business Method ("CBM") review of the patents-in-suit.  The plaintiff in the four cases, Progressive Casualty Insurance Company ("Progressive"), opposes these motions.  On Progressive's motion, the Court held oral argument on April 11, 2013.  After weighing the arguments raised during the hearing and in the briefs, and applying the law established by statute, the Court concludes that the cases will be stayed.

## I. Facts

Progressive has sued Liberty Mutual, State Farm, and Hartford for allegedly infringing upon Progressive's patents relating to certain usage-based insurance technologies (the "970," "598," and "358" patents) and online servicing technologies (the "088" and "269" patents).[4]  ECF No. 64 in Case No. 1:10CV01370; ECF No. 6 in Case No. 1:11CV00082; ECF No. 4 in Case No. 1:12CV01068; ECF No. 1 in Case No. 1:12CV01070.  The two lawsuits against Liberty Mutual were filed in June 18,

---

[2] The name "Hartford" is used to refer, collectively, to Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, and Hartford Underwriters Insurance Company.

[3] The PTAB is an administrative adjudicatory body of the United States Patent and Trademark Office ("PTO").  *See* 35 U.S.C. § 6.

[4] Progressive alleges that Liberty Mutual and State Farm have infringed upon all five patents-in-suit, and that Hartford has infringed upon the usage-based patents (970, 598, and 358).

2010, and January 12, 2011. The lawsuits against State Farm and Hartford were both filed on April 30, 2012. After conducting, on December 14, 2012, a case management conference with all of the parties, the Court issued an order consolidating the four cases for pretrial proceedings, setting the cases on a complex track, and adopting a common pretrial schedule. *See, e.g.,* ECF No. 104 in Case No. 1:11CV00082. At that time, the Court denied, without prejudice, motions to stay filed by Liberty Mutual and Hartford.[5] The Court permitted, however, Liberty Mutual and Hartford to move the Court to revisit the matter of staying the cases if and when the PTAB determined that an administrative trial would proceed on any of Liberty Mutual' petitions to the PTO for CMB review of the patents-in-suit. ECF No. 85 in Case No. 1:12CV01070; ECF No. 105 in Case No. 1:11CV00082; ECF No. 34 in Case No. 1:12CV01070.

Since that ruling, the PTAB has authorized CBM review of every claim of each of the five patents-in-suit asserted by Progressive against Liberty Mutual. *See* ECF No. 102 at 2 in Case No. 1:10CV01370. As part of the PTAB's authorization, panels of three administrative patent judges have preliminarily determined that "it is more likely than not that" every claim asserted by Progressive against Liberty Mutual is "unpatentable." *See* ECF No. 102 at 2 in Case No. 1:10CV01370. The PTAB has scheduled trials for all five patents-in-suit, and, each of the proceedings are scheduled

---

[5] State Farm did not join these initial motions to stay.

-4-

to be fully briefed, argued, and submitted for decision by November 13, 2013.  ECF No. 102 at 2  Case No. 1:10CV01370.

Now, to avoid the potential for costly and duplicative litigation in two fora, Liberty Mutual, State Farm, and Hartford, all move to stay the lawsuits brought against them by Progressive in this Court.  ECF No. 98 in Case No. 1:10CV01370; ECF No. 118 in Case No. 1:11CV00082; ECF No. 36 in Case No. 1:12CV01068; ECF No. 48 in Case No. 1:12CV01070.

## II.  <u>The Leahy-Smith America Invents Act ("AIA")</u>

The motions to stay are governed by the Leahy-Smith America Invents Act ("AIA").  Section 18 of the AIA created a new transitional program authorizing persons who have been sued for infringing a CBM patent[6] to seek "post-grant review" from the PTO regarding the validity of the patent.  AIA § 18(a)(1) P.L. 112-29, 125 Stat. 284, 329-30 (2011).  The AIA was signed into law on September 16, 2011, and § 18, the CBM review procedure component, was implemented a year later, on September, 16, 2012.[7]  AIA § 18(a)(1), P.L. 112-29, 125 Stat. 284, 329 (2011); *see* 37

---

[6] A CBM patent is "a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions."  37 C.F.R. § 42.301(a).

[7] The CBM review at issue was initiated after Progressive had filed each of the lawsuits involved herein.

C.F.R. § 42.300. Under the AIA, a party may seek to stay a patent infringement action in federal district court where a "transitional proceeding for that patent" has been instituted. AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331. The AIA asks district courts to decide whether a stay should be granted based on a four-factor test:

> (1) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (2) whether discovery is complete and whether a trial date has been set;
>
> (3) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (4) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1), P.L. 112-29, 125 Stat. 284, 331 (2011).

It has been observed that "[t]his statutory test resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the [PTO]." *Market-Alerts Pty. Ltd. v. Bloomberg Finance, L.P.*, __ F. Supp. 2d __, 2013 WL 443973 at *2 (D. Del. 2013). "The substantial difference between the test set forth in [AIA] § 18(b)(1) and that employed by courts in the ordinary patent reexamination context is the inclusion of a fourth factor, which requires the court to consider 'whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.'" *Id.; see, e.g., ImageVision.Net, Inc. v.*

-6-

*Internet Payment Exchange, Inc.*, 2012 WL 5599338 at *2 (D. Del. 2012) (applying test comprising first three factors of AIA § 18(b)(1)).

Although legislative history is not law, it is, at times, helpful to consider discussions had during a law's development.  For that purpose, the Court has considered comments made by one of the sponsors of § 18, Senator Charles Schumer, who explained that the transitional program for reviewing CBM patents was proposed in response to the large number of poor quality business method patents engendered, in part, by permissive court rulings, and the concomitant "cottage industry" of business method patent litigation.  157 Cong. Rec. S1363.   According to Senator Schumer, while federal courts have begun to address this problem by crafting more restrictive standards for issuing business method patents, this development has nevertheless left "in limbo" many patents issued by the PTO that are not in fact valid.  *Id.*  Senator Schumer also offered that:

> Litigation over invalid patents places a substantial burden on U.S. courts and the U.S. economy. Business-method inventions generally are not and have not been patentable in countries other than the United States. In order to reduce the burden placed on courts and the economy by this back-and-forth shift in judicial precedent, the Schumer-Kyl transitional proceeding authorizes a temporary administrative alternative for reviewing business method patents.

*Id.*

Senator Schumer stated that the amendment which was the precursor to AIA § 18 was "designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents" and, to that end, the legislation "places a very heavy thumb on the scale in favor of a stay being granted."  157 Cong. Rec. S1363. Senator Schumer identified the fourth § 18(b)(1) factor as being consistent with this purpose:

> The amendment employs the [four-factor] test, rather than other multi-factor tests employed by other district courts [in deciding stay motions filed in response to PTO reexamination proceedings] because this test properly emphasizes a fourth factor that is often ignored by the courts: 'whether a stay will reduce the burden of litigation on the parties and on the court.'  Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time.  This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation.

157 Cong. Rec. S1364.

In sum, the test established by the AIA is designed to increase the likelihood that a stay will be granted when transitional CBM review, in comparison with an ordinary PTO reexamination, has been instituted.

## III. Analysis

### A.    Factor #1: Whether a stay, or denial thereof, will simplify the issues in question and streamline the trial.

Three-judge panels of administrative patent judges at the PTAB have determined, with respect to every claim of every one of the five patents asserted by Progressive against Liberty Mutual, that "it is more likely than not that" the claims are "unpatentable."[8] ECF No. 102 at 2 in Case No. 1:10CV01370; *see* ECF Nos. 98-2; 98-3; 98-4; 98-5; 98-6; 102-1 in Case No. 1:10CV01370.  Based on these preliminary determinations, Liberty Mutual argues that it is probable that the patent claims asserted by Progressive against Liberty Mutual will be declared invalid, and, if any patent claims do survive, it is likely that their terms will be different from those presently asserted.  ECF No. 98-1 at 2 in Case No. 1:10CV01370.  According to Liberty Mutual, it is therefore wasteful to continue litigating Progressive's patent claims in this Court during the pendency of the PTAB trials: if the claims are invalidated, the lawsuits against Liberty Mutual may be dismissed; if Progressive amends the claims, as it has already proposed to do for some, then different claims will be at issue.  *See* ECF No. 98-1 at 6 in Case No. 1:10CV01370.  State Farm and

---

[8] These determinations were made in the course of the PTAB deciding whether  to proceed with CBM review of the claims at issue.  *See, e.g.,* ECF No. 98-2 at 3 in Case No. 1:10CV01370.

Hartford assert similar arguments.  State Farm claims that there is no need for the Court and the parties to devote substantial time and resources litigating the claim construction, non-infringement, and invalidity issues when, by the end of the year, these claims will either be invalidated or amended.  ECF No. 36 at 4 in Case No. 1:12CV01068.  Hartford argues that the scope of the asserted claims is likely to change during CBM review, and awaiting those changes would simplify the issues in this case.  ECF No. 48 at 3 in Case No. 1:12CV01070.

From Progressive's perspective, staying the proceedings would not simplify or streamline the issues for trial.  First, Progressive claims that CBM review "will not address invalidity based on 35 U.S.C. §§ 101, 111, 112, 115, 116, and 133" and will also not address equitable defenses such as unclean hands, laches, estoppel, waiver or acquiescence.  ECF No. 100 at 8 in Case No. 1:10CV01370.  Second, although Liberty Mutual will be estopped from re-litigating the same arguments it makes to the PTAB in the federal court litigation, estoppel will not apply to State Farm and Hartford because they are not participants of the transitional CBM program.  ECF No. 100 at 8 in Case No. 1:10CV01370.  Third, according to Progressive, the lack of highly technical language in the patents-in-suit militates against staying the cases.  ECF No. 100 at 9 in Case No. 1:10CV01370.  Progressive also argues that, unless the PTAB invalidates *all* of the patent claims at issue, there will almost certainly remain issues

to be tried by this Court that were not addressed by the PTAB.  ECF No. 100 at 8 in Case No. 1:10CV01370.

At least one district court has observed that staying a patent case pending administrative review of the patent's validity can simplify litigation in federal court in the following ways:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if [the] patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences . . . .

*Gioello Enterprise Ltd. v. Mattel, Inc.*, 2001 WL 125340 at *1 (D. Del. 2001).

Based on the preliminary determinations made by the PTAB, it appears that each claim in contention between Progressive and Liberty Mutual, across the five patents-in-suit, is "more likely than not" to be invalidated.  The PTAB issued highly detailed reports spanning hundred of pages to justify its initial evaluation of the patent claims.  *See, generally,* in Case No. 1:10CV01370, ECF Nos. 98-2; 98-3; 98-4; 98-5; 98-6; 102-1; *see also* ECF No. 112 at 54.   And, prior to issuing its decisions, the PTAB reviewed 777 pages of detailed arguments submitted by Progressive.  ECF No. 112 at 53-54, 73 in Case No. 1:10CV 01370; *see* 37 C.F.R. § 42.207(a) (permitting

patent owner to file preliminary responses to petition for post-grant review). Progressive does not contest statistics showing that in *inter partes* proceedings, the PTO cancels *all* claims of a patent 42% of the time and either cancels or amends claims 89% of the time.  ECF No. 75-1 at 4 in Case No. 1:10CV01370; *see also* ECF No. 75-8 (PTO statistics based on total *inter partes* reexamination certificates issued between 1999 and June 30, 2012).  Because it appears virtually certain that the landscape of the litigation will be significantly different following the PTAB proceedings, it is wasteful to now engage in litigation over patent claims that are likely to be altered or invalidated in the course of CBM review.  Moreover, while Hartford and State Farm are not participants in the CBM review program, the patent claims asserted by Progressive against them overlap the claims at issue in the Liberty Mutual cases.  ECF No. 36 at 1 in Case No. 1:12CV01068 (PTAB, in deciding Liberty Mutual's petitions for CMB review, "has issued decisions spanning over 300 pages rejecting as likely invalid every single one of the 131 claims that Progressive has asserted against *State Farm*" [emphasis added]); ECF No. 52 at 4 in Case No. 1:12CV01070 ("[t]here is a high probability that the issues in [the case against Hartford] will be simplified, if not eliminated altogether, by the CBM proceedings").

Progressive's arguments against a stay, on this first factor, is weak.  Progressive claims that the 89% statistic is misleading because it also shows the high likelihood

that at least *some* claims will survive and, therefore, a stay would not preserve many resources.  ECF No. 100 at 8 in Case No. 1:10CV01370.  This argument is unavailing. Progressive has asserted over 130 patent claims against Liberty Mutual and State Farm.  ECF No. 112 at 42 and 49 in Case No. 1:10CV01370.  That a few of those claims may survive without amendment does not mean that the issues will not be significantly streamlined.  Similarly, that the PTAB may not address every single ground of invalidity and every art reference that might be raised in federal court, does not mean CBM review will not drastically simplify the issues presented to the Court. If a claim is invalidated or amended, it will not matter whether the PTAB addressed every ground of invalidity. Of importance is that, as a result of the CBM review, the scope  and substance of the issues before the Court will be refined.  While estoppel will not automatically apply to State Farm and Hartford because they have not sought CMB review, Hartford has agreed to be estopped from asserting invalidity arguments based on 35 U.S.C. §§ 102 and 103 on which the PTAB issues a final, written decision.  *See* ECF No. 52 at 6 in Case No. 1:12CV01070.  Lastly, the lack of technical language in the patents-in-suit does not mean that the PTAB will fail to resolve complex issues.

An assessment of the parties' arguments with respect to the first factor weighs in favor of staying the actions.

**B.     Factor #2:  Whether discovery is complete and whether a trial date has been set**.

Discovery has commenced–initial disclosures have been exchanged and the defendants have provided initial invalidity and unenforceability contentions and certain paper discovery.  *See* ECF No. 100 at 11 in Case No. 1:10CV01370. Discovery is, however, far from complete and no trial date has yet been set for these consolidated cases.  As of this writing, no documents have been produced beyond those required with the parties' initial contentions, no depositions have been noticed or taken, no expert reports have been exchanged, and no subpoenas have been served. ECF No. 52 at 9 in Case No. 1:12CV01070; *see* ECF No. 112 at 60, 70 in Case No. 1:10CV01370.  The stage of discovery may fairly be characterized as "early."  Staying a case at an early juncture advances judicial efficiency and "will maximize the likelihood that neither the Court . . . nor the parties expend their assets addressing invalid claims." *Gioello Enterprises Ltd. v. Mattel, Inc.*, 2001 WL 125340 at *2.

The second factor weighs in favor of staying the proceedings.

**C.     Factor #3: Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**.

Liberty Mutual maintains that staying the proceedings will not cause prejudice to Progressive because money damages will adequately compensate Progressive if it is later determined that Liberty Mutual has infringed upon any of Progressive's

-14-

patents.  ECF No. 102 at 4 in Case No. 1:10CV01370.  Hartford points to Progressive's licensing agreement with another insurance company, Allstate, as evidence that money damages will provide adequate relief to Progressive.  ECF No. 52 at 3 in Case No. 1:12CV01070.  State Farm maintains that a stay will benefit, rather than prejudice, Progressive because all parties will benefit from more certainty about what claims will be litigated.  ECF No. 36 at 4 in Case No. 1:12CV01068.

Progressive emphasizes that this is Liberty Mutual's third motion to stay the proceedings, and this Court has stayed the matter once before in each of the Liberty Mutual cases.  *See* ECF No. 49 in Case No. 1:10CV01370 (stay granted on November 12, 2010); ECF No. 86 in Case No. 1:11CV00082 (stay granted on August 2, 2011).  According to Progressive, Liberty Mutual's present motion to stay is an attempt to gain a tactical advantage by keeping the lawsuits dormant until one of Progressive's patents–specifically, the 970 patent–expires in less than three years.  ECF No. 100 at 13 in Case No. 1:10CV01370.  This strategy, claims Progressive, is an attempt by Liberty Mutual to avoid a permanent injunction on the 970 patent.  ECF No. 100 at 13 in Case No. 1:10CV01370.  Progressive also stresses that Liberty Mutual, State Farm, and Hartford are all competitors in the market, which "raises a presumption" that Progressive will be prejudiced by any stay.  ECF No. 100 at 12 in Case No.

1:10CV01370; ECF No. 41 at 3 in Case No. 1:12CV01068; ECF No. 49 at 6 in Case No. 1:12CV01070.

Without question, Progressive will be somewhat prejudiced by another stay. The salient question posed by the third factor, however, is whether Progressive will be unduly prejudiced.  In determining whether a plaintiff might be unduly prejudiced by a stay, courts have turned to considerations including "the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship of the parties." *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 2013 WL 443973 at *5.  Here, there is no indication that Liberty Mutual engaged in dilatory tactics in either petitioning for CBM review or filing its motions to stay.  To the contrary, Liberty Mutual immediately filed its administrative petitions when the transitional CBM program became available in September, 2012; *see* ECF No. 112 at 43 in Case No. 1:10CV01370; *see also* Table, attached as Appendix A, provided by Liberty Mutual during the December 14, 2012 case management conference (showing that CBM petitions were filed between September 16, 2012, and November 19, 2012); and it moved to stay the district court proceedings as soon as the PTAB approved CBM review for four of the five patents-in-suit (in fact, Liberty Mutual moved to stay the litigation even earlier–before the PTAB authorized

-16-

review–resulting in this Court's denial of those motions as premature).[9]  *See* ECF No. 98 in Case No. 1:10CV01370 (and attached exhibits showing dates of PTAB authorization).  While it is true that the Court has once stayed both Liberty Mutual cases in response to Liberty Mutual's petitions to the PTO to conduct *ex parte* reexaminations, ECF No. 49 in Case No. 1:10CV01370 and ECF No. 86 in Case No. 1:11CV00082, those proceedings were significantly different from the ones presently before the PTAB.  First, CBM proceedings are *inter partes* rather than *ex parte*, which provides Liberty Mutual a better platform to advocate its interests.  ECF No. 75-1 at 8 in Case No. 1:10CV01370 (incorporated into ECF No. 98). Second, CBM proceedings are presided over by a panel of three administrative judges whom are required to have "competent legal knowledge and scientific ability," 35 U.S.C. § 6(a), as opposed to a single patent examiner.  ECF No. 112 at 52 in Case No. 1:10CV01370. Finally, to institute CBM review, the petitioner must show that the claims are likely invalid, 35 U.S.C. § 324(a), which is more onerous than meeting than the "substantial new question of patentability" standard required to initiate *ex parte* reexaminations. 35 U.S.C. § 303(a).

---

[9] Prior to filing its present motions to stay, Liberty Mutual filed notices apprising the Court of the status of its CBM petitions.  *See* ECF Nos. 90 and 95 in Case No. 1:10CV01370.

-17-

Liberty Mutual's motions do not appear to be delay tactic.  It is of significance that the CBM program was not available at the time the Court first stayed the litigation and the AIA had not yet been signed into law.   Under the CBM review, Liberty Mutual will have a better opportunity than it had during the *ex parte* reexamination to advocate its views, the CBM proceedings will be decided by a panel of three experienced judges with specialized technical training, and the PTAB has already preliminarily indicated an outcome favorable to Liberty Mutual.  Seeking a stay under these circumstances is prudent.

The Court acknowledges that staying the proceedings is likely to be somewhat prejudicial to Progressive.  A stay may postpone the court proceedings for up to a year and a half–the maximum time for the PTAB to complete CBM review.  ECF No. 100 at 14 in Case No. 1:10CV01370.  If this occurs, Progressive's ability to obtain a permanent injunction on its 970 patent, which expires in less than three years, could be compromised.  Furthermore, the Court rejects the defendants' claims that they are not engaged in direct competition with Progressive.  All parties are engaged in the business of providing automobile insurance to individual consumers,[10] and there is no

---

[10] *See* Progressive's website at http://www.progressive.com/auto/ (last visited April 16, 2013); Liberty Mutual's website at http://www.libertymutual.com/auto-insurance (last visited April 16, 2013); Hartford's website at http://www.thehartford.com/auto-insurance/ (last visited April 16, 2013); and State Farm's website at http://www.statefarm.com/insurance/ auto_insurance/auto_insurance.asp (last visited April 16, 2013).

dispute that Progressive has access to a nation-wide market.[11]  *See* ECF No. 112 at 14 in Case No. 1:10CV01370.  "Courts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."  *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255 at *8 (D. Del. January 11, 2013).

Nonetheless, the Court finds Progressive's claims of prejudice to be overstated.  Eighteen months is, under the current state of the law,  the ceiling for the duration of CBM review; ECF No. 100 at 14 in Case No. 1:10CV01370; there is no indication that the PTAB will take nearly that long.  The Department of Commerce regulations provide that "pendency before the [PTAB] is normally *no more than one year* . . . ."  37 C.F.R. § 42.300(c) (emphasis added).  The time can be extended by "up to six months for good cause by the Chief Administrative Patent Judge."  37 C.F.R. § 42.300(c).  Because Liberty Mutual filed their petitions soon after the transitional CBM program was implemented in September, 2012, there is good reason to believe that the PTAB will conduct and resolve its proceedings expeditiously.

---

[11] Even Liberty Mutual's own pleadings aver that it is a competitor of Progressive.  *See* ECF No. 73 at 22 in Case No. 1:10CV01370.

The PTAB is likely to decide the issues before it well in advance of the Court to rendering its decisions.  Moreover, the litigation of claims before a panel of specialized experts will refine the issues and create a record that would inform, assist, and expedite any subsequent litigation in this Court.  In addition, Progressive cannot credibly contest that an injunction received from this Court for the 970 patent would be short-lived on account of the patent's expected expiration date in less than three years.  ECF No. 100 at 4 in Case No. 1:10CV01370.

More significantly, Progressive has not shown why monetary damages would not alleviate the prejudice that it claims it will suffer.  Progressive has granted a license permitting another insurance company, Allstate, to use its usage-based telematics program pursuant to a settlement agreement.  *See* ECF No. 49 at 4 in Case No. 1:12CV01070.  While the Court will not "use settlement discussions as a sword to defeat [Progressive's] desire to proceed with litigation rather than succumb to a stay"; *Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351 at *4 (D. Del. December 13, 2010); the Court will note that there appears to be a dollar amount that Progressive could be willing to accept in exchange for any loss of competitive advantage resulting from a competitor's use of its patented technologies.

Based on the foregoing, the Court concludes that any prejudice that may result to Progressive do not overcome the collective weight of the other factors.  The Court

-20-

is not convinced that staying the proceedings will so prolong the litigation that Liberty Mutual, State Farm and Hartford will achieve significant and irreversible strides in the market at the expense of Progressive. There is also no plausible suggestion that any loss in competitive advantage could not be partially, if not fully, mitigated by monetary damages. In short, while this factor moderately points in favor of denying the motions to stay, it is insufficient to defeat the remaining factors which strongly counsel in favor staying the cases.

**D.      Factor #4: Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.**

The fourth factor of the test was enacted to increase the likelihood that a stay would be granted. Progressive reminds the Court that it must not look solely at this factor, but to all four factors, to determine whether stays should enter. Yet, Progressive makes no arguments disputing that the fourth factor points in favor of granting the motions to stay. A stay would relieve Liberty Mutual and Progressive of the burden of litigating in multiple fora. This Court would be relieved of having to expend substantial judicial resources in deciding claim construction, non-infringement, and invalidity issues before those claims are invalidated, narrowed, or refined through CMB review. Although neither State Farm nor Hartford are involved in the CBM proceedings, they, too, would be relieved of the burden of engaging in unnecessary litigation. The challenged claims involved in the State Farm and Hartford

litigation overlap with those at issue in the Liberty Mutual cases, and Progressive does not argue that State Farm and Hartford are prohibited from seeking to stay their cases because they are not participants in the administrative proceedings before the PTAB.

### IV.  Conclusion

The analysis of the four-factor test set forth in § 18(b)(1) of the AIA counsels in favor of granting each defendant's motion to stay.  Accordingly, the motions to stay are granted.  The consolidated cases are  administratively closed pending notification of the completion of the CBM review.

IT IS SO ORDERED.


    April 17, 2013                                    s/ Benita Y. Pearson
Date                                               Benita Y. Pearson
                                                   U.S. District Judge

## Liberty Mutual Petitions Under Transitional Program for Covered Business Method Patents

| | U.S. Patent Number | Combinations based on, *inter alia*,: | PTAB's Petition Number | PTAB Filing Date | Progressive's Mandatory Notices Filed | Progressive's (Optional) Preliminary Response Due | PTO Deadline to Grant or Deny Petition |
|---|---|---|---|---|---|---|---|
| **Website** | 7,877,269 | NAIC, ComputerGuard | CBM2013-00002 | 10/2/2012 | 10/19/2012 | 1/2/2013 | 4/2/2013 |
| **Website** | 7,877,269 | ComputerGuard Peterson | CBM2013-00001 | 10/2/2012 | 10/19/2012 | 1/2/2013 | 4/2/2013 |
| **Vehicle Telematics** | 7,124,088 | NAIC, ComputerGuard Peterson | CBM2012-00010 | 9/28/2012 | 10/19/2012 | 12/28/2012 | 3/28/2013 |
| **Vehicle Telematics** | 7,124,088 | Peterson | CBM2012-00011 | 9/28/2012 | 10/19/2012 | 12/28/2012 | 3/28/2013 |
| **Vehicle Telematics** | 8,090,598 | Burge, Nakagawa | CBM2013-00004 | 10/15/2012 | 11/7/2012 | 1/15/2013 | 4/15/2013 |
| **Vehicle Telematics** | 8,090,598 | Kosaka | CBM2013-00003 | 10/15/2012 | 11/7/2012 | 1/15/2013 | 4/15/2013 |
| **Vehicle Telematics** | 8,140,358 | Nakagawa, Kosaka, Herrod | CBM2012-00003 | 9/16/2012 | 10/9/2012 | 12/16/2012 (Monday 12/17) | 3/16/2013 (Saturday) |
| **Vehicle Telematics** | 8,140,358 | RDSS + Kosaka | CBM2013-00009 | 11/19/2012 | 12/10/2012 | 2/19/2013 (Monday 2/17) | 5/19/2013 (Sunday) |
| **Vehicle Telematics** | 6,064,970 | Bouchard, Pettersen, Herrod | CBM2012-00004 | 9/16/2012 | 10/9/2012 | 12/16/2012 (Monday 12/17) | 3/16/2013 (Saturday) |
| **Vehicle Telematics** | 6,064,970 | Kosaka | CBM2012-00002 | 9/16/2012 | 10/9/2012 | 12/16/2012 (Monday 12/17) | 3/16/2013 (Saturday) |